IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| FINANCIAL TRUST COMPANY, INC., ) | CIVIL NO. 2009/106 |
| ) | |
| Plaintiff, ) | ACTION FOR DAMAGES |
| ) | |
| vs. ) | |
| ) | |
| THE BEAR STEARNS COMPANIES INC. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

## VERIFIED COMPLAINT

COMES NOW the Plaintiff, Financial Trust Company, Inc. ("Financial Trust"), by and through its undersigned counsel, and for its Verified Complaint against Defendant, The Bear Stearns Companies Inc. ("Bear Stearns"), alleges as follows:

1. Financial Trust was at all relevant times herein a corporation incorporated under the laws of the Virgin Islands with its principal place of business in the Virgin Islands.

2. Bear Stearns was at all relevant times herein a Delaware corporation with its principal place of business in the State of New York. On June 2, 2008, JP Morgan Chase & Co. ("JP Morgan") completed its acquisition of Bear Stearns making Bear Stearns a wholly owned subsidiary of JP Morgan.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a) based on diversity of citizenship and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 2 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                          Page 2

4. Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the acts and omissions giving rise to the Verified Complaint were committed or occurred in this District.

5. Financial Trust was at all relevant times herein engaged in the business of providing financial and business consulting services, and in connection therewith, makes investments in securities and other investments, which it reasonably expects to be profitable and appropriate.

6. Jeffrey Epstein ("Epstein"), a Virgin Islands resident, was at all relevant times herein the president, a director, and the sole shareholder of Financial Trust. Epstein has had a relationship with Bear Stearns beginning in 1976. Since 1981, Epstein has conducted hundreds of millions of dollars in transactions with Bear Stearns for his own, as well as his clients', accounts and he conducted this business with the senior management of Bear Stearns.

7. At or about the time of the events in question, Financial Trust owned and held 120,000 shares of Bear Stearns stock in a brokerage account maintained at Merrill Lynch, Account No. 5AX-07000 (the "Merrill Lynch Account").

8. Epstein was at all relevant times herein the principal of Financial Trust with sole responsibility for the initial investment analysis, purchase decisions, ongoing financial analysis and sale decisions relating to Bear Stearns stock.

9. James Cayne ("Cayne") was the Chief Executive Officer of Bear Stearns from 1993 until January 2008 and Chairman of the Board from 2001 until Bear Stearns' collapse in March, 2008.

10. Warren Spector ("Spector") was Co-President and Co-Chief Operating Officer of Bear Stearns from 2001 until August 2007. Spector was forced to resign these

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 3 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                Page 3

positions in August 2007, but remained Senior Managing Director of Bear Stearns until December 28, 2007.

11.   Samuel Molinaro ("Molinaro") was Chief Financial Officer of Bear Stearns at all relevant times herein. He became CFO in October 1996. He became Executive Vice President of Bear Stearns in December 2001 and Chief Operating Officer in August 2007.

12.   Alan Schwartz ("Schwartz") became Co-President and Co-COO of Bear Stearns on June 25, 2001. He was named the President of Bear Stearns on August 5, 2007 and became the Chief Executive Officer on January 9, 2008.

13.   Alan Greenberg ("Greenberg") was a director of Bear Stearns at all relevant times herein. He was Chairman of the Board from 1985 to 2001, CEO from 1978 to 1993 and served as Chairman of the Executive Committee at the time of Bear Stearns' collapse in March 2008.

14.   The actions and omissions by all of Bear Stearns' agents and employees and the knowledge of all of Bear Stearns' agents and employees are imputed to Bear Stearns under the doctrine of respondeat superior.

15.   Bear Stearns and its agents fraudulently overstated the value of Bear Stearns' mortgages, mortgage-backed and asset-backed securities and other derivative financial instruments, the adequacy of its liquidity and capital reserves, and the quality of Bear Stearns' risk management with the intent of inducing Financial Trust to retain the shares of Bear Stearns held in the Merrill Lynch Account, which Financial Trust did until Bear Stearns' collapse in March 2008.

16.   Bear Stearns sought to induce Financial Trust to retain its Bear Stearns stock because, among other reasons, Bear Stearns knew that other large investors would view Financial Trust's sale of a significant block of shares of Bear Stearns stock as a loss

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 4 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint	Page 4

of confidence in Bear Stearns by a company owned and managed by a person seen by such large investors as close to the firm. This would undermine confidence in Bear Stearns' management at a critical time when Bear Stearns' liquidity and Bear Stearns' valuation of its assets were being investigated by the press, including Landon Thomas at the New York Times, following the collapse of two Bear Stearns hedge funds, the Bear Stearns High-Grade Structured Credit Strategies Fund ("the "High-Grade Fund") and the Bear Stearns High-Grade Structured Credit Strategies Leverage Fund ("the Enhanced Fund") (collectively "the Hedge Funds"), in the summer of 2007.

17. Because Financial Trust was a major, long-time investor in Bear Stearns, Epstein regularly communicated directly with the most senior management of Bear Stearns.

18. Bear Stearns knew that Financial Trust would not retain shares of Bear Stearns stock if Bear Stearns accurately, honestly and completely described Bear Stearns' true financial condition and the failed processes of Bear Stearns' risk management in the area of mortgage-backed securities. For example, Bear Stearns knew that if Financial Trust and Epstein concluded that Bear Stearns' capital base was materially overstated due to Bear Stearns' failure to properly mark to market its assets (failure to value securities at fair market value), and that Bear Stearns' liquidity and capital reserves were insufficient, Financial Trust would sell its shares of Bear Stearns stock.

19. The late disclosure of the true value of Bear Stearns' assets and the insufficiency of Bear Stearns' liquidity and capital reserves resulted in Bear Stearns' ultimate collapse and the precipitous decline of Bear Stearns stock price, thereby injuring Financial Trust. On Monday, March 17, 2008, Bear Stearns shares fell to as low

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 5 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                  Page 5

as $2.84 per share following the announcement by JP Morgan that it had reached an agreement to purchase Bear Stearns for $2.00 per share. Bear Stearns was successful in untruthfully manipulating Financial Trust to retain its shares until it collapsed in March, 2008.

20.     Financial Trust sold 20,000 Bear Stearns shares, held in the Merrill Lynch Account, on or about March 14, 2008 for a severely reduced price of $34.9876 per share, and sold 100,000 shares held in the Merrill Lynch Account, on or about March 17, 2008 for the sacrifice price of $3.4095 per share.

21.     Bear Stearns' false and misleading material misrepresentations and omissions, in oral conversations and meetings which Epstein had with the highest levels of Bear Stearns' senior management, and in SEC filings and Bear Stearns' investor conference video presentations and press releases which Epstein read, viewed, and relied upon, caused Financial Trust substantial losses. Financial Trust was injured by Bear Stearns' misrepresentations and omissions that fraudulently and negligently overstated the value of Bear Stearns' assets and therefore its capital base and concealed Bear Stearns' liquidity problems and insufficient capital reserves and its vulnerability to market circumstances. When these facts were disclosed, the value of Bear Stearns stock fell drastically, resulting in injury to Financial Trust.

22.     Bear Stearns' capital base as affected by its retained mortgages, mortgage-backed and asset-backed securities and its ability to "repo" its securities (short term or overnight borrowings secured by various assets on the balance sheet) was critical to Epstein's evaluation when Bear Stearns experienced difficulties with its future revenue stream beginning in 2006.

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 6 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                        Page 6

23. In conducting ongoing financial analysis of the company, Epstein relied on Bear Stearns' publicly filed financial statements, as well as personal discussions with Bear Stearns' senior management, including Cayne and Greenberg, concerning, without limitation, Bear Stearns' liquidity and capital reserves, accounting policies and valuation procedures.

24. Bear Stearns had a capital base consisting of a concentration of assets in mortgages and mortgage-backed securities. Mortgages, mortgage-backed and other asset-backed securities and other derivative financial instruments held by Bear Stearns were a major slice of the Bear Stearns capital base pie:

- According to its 2004 10-K, Bear Stearns reported that it held $27.679 billion in mortgages, mortgage–backed and other asset-backed securities and $12.711 billion in other derivative financial instruments.

- According to its 2005 10-K, Bear Stearns reported that it held $40.297 billion in mortgages, mortgage-backed and other asset-backed securities and $12.957 billion in other derivative financial instruments.

- According to its 2006 10-K, Bear Stearns reported that it held $43.266 billion in mortgages, mortgage-backed and other asset-backed securities and $11.617 billion in other derivative financial instruments.

- According to its 2007 10-K, Bear Stearns reported that it held $46.141 billion in mortgages, mortgage-backed and other asset-backed securities and $19.725 billion in other derivative financial instruments.

25. By August 2006, a significant downtown in the housing market was being experienced across the country. Consequently, default rates on subprime mortgages began to rise.

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 7 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                                  Page 7

26. Because of Bear Stearns' substantial exposure to the U.S. residential mortgage market, Epstein became concerned the downturn in the housing market and the rising defaults in the subprime markets would have an outsized effect on Bear Stearns' ability to borrow in the repo market. Beginning in the summer of 2006 and continuing through 2007 and the beginning of 2008, Epstein had numerous telephone conversations about such matters with Cayne or Greenberg, during which telephone calls Epstein received repeated false and misleading assurances from Cayne and Greenberg regarding Bear Stearns' unimpaired access to funds in the repo market.

27. Bear Stearns and its agents repeatedly materially misrepresented the value of Bear Stearns' assets as well as its processes to calculate value in Bear Stearns' public financial statements and made false and misleading misrepresentations and omissions in these statements.

28. Epstein read the false, misleading, incomplete and material representations in Bear Stearns' financial statements as it was Epstein's practice to read all of Bear Stearns' Form 10-K and Form 10-Q filings with the SEC and he reasonably relied upon these representations, in addition to the confirmation of financial stability that he received from Bear Stearns' senior management, in Epstein's analysis of Bear Stearns in deciding whether Financial Trust should retain its shares of Bear Stearns stock which Financial Trust did to its economic detriment.

29. Bear Stearns' false and misleading material misrepresentations in SEC filings, which Epstein read and relied upon, include, but are not limited to, the following:

  (a) Bear Stearns' 2006 10-K representations that the public filing disclosed the "fair value" of Bear Stearns' holdings and obligations regarding

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 8 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint | Page 8

mortgages, mortgage-backed and asset-backed securities and other derivative financial instruments, that Bear Stearns marked "its financial instruments owned to fair value on a daily basis", that Bear Stearns compared its "model-based valuations with counterparties in conjunction with collateral exchange agreements"; and that Bear Stearns "regularly evaluate[d] and enhance[d]" its Value at Risk models "in an effort to more accurately measure risk of loss";

(b) Bear Stearns' second quarter 2007 10-Q's representation that Bear Stearns "regularly evaluate[d] and enhance[d]" its Value at Risk models "in an effort to more accurately measure risk of loss";

(c) Bear Stearns' third-quarter 2007 10-Q's representations that Bear Stearns "regularly evaluate[d] and enhance[d]" its Value at Risk models "in an effort to more accurately measure risk of loss" and that the current market value of Bear Stearns' retained mortgages, mortgage-backed and asset-backed securities was $55.936 billion and that the current market value of its other retained derivative financial instruments was $14.688 billion;

(d) Bear Stearns' 2007 10-K's representation that Bear Stearns "compared[d] its model-based valuations with counterparties in conjunction with collateral exchange agreements" and that Bear Stearns "regularly evaluate[d] and enhanced" its Value at Risk models "in an effort to more accurately measure risk of loss";

(e) Bear Stearns' 2007 10-K's representations that the current market value of Bear Stearns' retained mortgages, mortgage-backed and asset-backed

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 9 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                   Page 9

securities was $46.141 billion and that the current market value of its other retained derivative financial instruments was $19.725 billion.

30. All of the SEC filings referred to herein which had been read and relied upon by Epstein had been certified by Molinaro as the CFO of Bear Stearns and, with the exception of the 2007 10-K, all of the SEC filings referred to herein had been certified by Cayne as the CEO. The 2007 10-K had been certified by Molinaro as CFO and Schwartz as CEO.

31. The U.S. Securities and Exchange Commission, Office of Inspector General, Office of Audits, in a Report entitled "SEC's Oversight of Bear Stearns and Related Entities: The Consolidated Supervised Entity Program", dated September 25, 2008 (the "SEC Report"), found that Bear Stearns used outdated, 10 year old Value at Risk models to assign values to its mortgage-backed securities which it failed to review even after the SEC warned Bear Stearns about them, that Bear Stearns failed to review, evaluate, or update its Value at Risk models, which were key to Bear Stearns' risk management, and that Bear Stearns publicly reported values for its retained mortgages, mortgage-and-asset backed securities and other derivative securities and other derivative financial instruments that were materially higher than those assigned by Bear Stearns' own risk managers and higher than Bear Stearns itself used for those same securities in transactions with counterparties.

32. On July 17, 2007, Bear Stearns reported that the Enhanced Fund could not meet investor redemption requests and margin calls in early June. Despite the Enhanced Fund's efforts to sell assets to raise liquidity, the Enhanced Fund could not meet its margin obligations and counterparties moved to seize collateral.

Case: 3:09-cv-00106-CVG-GWB Document #: 1 Filed: 08/05/09 Page 10 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint | Page 10

33. The day after the disintegration of the Enhanced Fund was announced, Cayne and Spector commenced participating in a 10-day bridge tournament in Nashville, Tennessee.

34. On August 3, 2007, Bear Stearns held a conference call that afternoon claiming that its financial position was "extremely solid…".

35. Bear Stearns issued a supporting press release in which it proclaimed, among other things, that "…the balance sheet, capital base and liquidity profile have never been stronger."

36. Following the effective demise of the Enhanced Fund, Financial Trust on August 6, 2007 sold 56,350 shares of Bear Stearns stock for $101.3799 per share. Epstein was concerned by what he had learned from reports about the Hedge Funds' problems and intended to sell the 120,000 shares of Bear Stearns stock held in the Merrill Lynch Account.

37. On or about August 6, 2007, Epstein was in the Virgin Islands and had phone conversations with Cayne about the demise of the Hedge Funds and the extent of the danger they posed to Bear Stearns as an enterprise, and Epstein's intention to sell Financial Trust's holdings in Bear Stearns stock.

38. Cayne, during the phone conversations on August 6, 2007 with Epstein, induced Epstein to retain Financial Trust's shares of Bear Stearns stock.

39. Cayne advised Epstein in the August 6, 2007 phone conversations that Financial Trust should retain its Bear Stearns stock because the problems that caused the collapse of the Hedge Funds were contained to those two funds. In addition, Cayne represented to Epstein that Bear Stearns itself owned good assets with solid valuations and had adequate liquidity. Cayne further represented that the Enhanced Fund's high

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 11 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint — Page 11

leverage and resulting liquidity issues did not affect Bear Stearns, itself, and did not impair Bear Stearns' ability to borrow in the repo market. Cayne also stated in multiple telephone conversations with Epstein beginning in August 2007 that Bear Stearns was working on a deal with China Citic Group, a large Chinese investment bank, which would provide a one billion dollar capital infusion as ample confirmation of Bear Stearns' financial health, notwithstanding the collapse of the Hedge Funds., so he advised Epstein to "hold tight" and for Financial Trust to retain its Bear Stearns stock as a solid investment. Epstein reasonably relied upon Cayne's representations which were made to induce Epstein to retain Financial Trust's shares of Bear Stearns stock.

40. Bear Stearns stock closed on August 6, 2007 at $113.81 per share.

41. On or about October 4, 2007, Bear Stearns hosted an "Investor Day" conference intended to reassure investors regarding the fixed-income segment of Bear Stearns that handled Bear Stearns' business in mortgage-backed securities.

42. During the conference, Cayne, Schwartz and Molinaro reassured investors regarding the risk to Bear Stearns from Bear Stearns' subprime exposure and the adequacy of Bear Stearns' liquidity and capital, the financial condition of Bear Stearns and the value of Bear Stearns' retained financial assets.

43. These claims were materially false and misleading when made. As Cayne, Schwartz and Molinaro knew, Bear Stearns' liquidity and capital reserves were insufficient given market conditions, placing Bear Stearns at risk.

44. Epstein reviewed and relied upon the materially false and misleading statements made at the conference, inducing him to continue to retain the shares of Bear Stearns stock owned by Financial Trust in the Merrill Lynch Account.

Case: 3:09-cv-00106-CVG-GWB Document #: 1 Filed: 08/05/09 Page 12 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint Page 12

45. If Cayne, Schwartz and Molinaro had honestly, completely and accurately reported the facts about Bear Stearns' valuation of assets and the true position of its liquidity and capital reserves, Financial Trust would have sold the 120,000 shares held in the Merrill Lynch Account.

46. On or about November 14, 2007, just over a month after the reassurances made during the "Investor Day" conference, Bear Stearns announced that it expected to write down $1.2 billion on its retained mortgages, mortgage-backed securities and asset-backed securities and other derivative financial instruments.

47. On or about November 14, 2007, Molinaro, in a publicized presentation at the Merrill Lynch Banking and Finance Conference, represented that the write-downs should "suffice" to accurately value products such as mortgages, mortgage-backed securities and asset-backed securities and other derivative financial instruments that Bear Stearns retained on its balance sheet and claimed that the worst of Bear Stearns' mortgage write-downs was over.

48. Epstein was aware of, and subsequently reviewed and relied upon, the materially false and misleading remarks made by Molinaro at the November 14, 2007 presentation, which induced him to retain the shares of Bear Stearns stock owned by Financial Trust held in the Merrill Lynch Account.

49. On or about December 20, 2007, only five weeks after claiming that it had properly written down the value of its assets, Bear Stearns announced that it was increasing its write-downs by almost 60%, from $1.2 billion to $1.9 billion.

50. On March 10, 2008, Bear Stearns issued a press release claiming that there was "absolutely no truth to the rumors of the liquidity problems" at Bear Stearns and

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 13 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                      Page 13

quoting Schwartz as stating that Bear Stearns' "balance sheet, liquidity, and capital remain strong".

51. On or about the weekend of March 14, 2008, JP Morgan offered just $2.00 a share for Bear Stearns stock. Eventually, JP Morgan paid $10.00 per share.

52. Financial Trust sold 20,000 Bear Stearns shares, held in the Merrill Lynch Account, on March 14, 2008 for $34.9876 per share, and sold 100,000 shares held in the Merrill Lynch Account, on March 17, 2008 for $3.4095 per share.

53. On March 31, 2008, JP Morgan and Bear Stearns announced that JP Morgan had completed its acquisition of Bear Stearns. As part of the JP Morgan announced accord, the Federal Reserve agreed to help it guarantee Bear Stearns' trading obligations, including funding up to $30 billion of Bear Stearns less liquid assets .

## COUNT I (FRAUDULENT MISREPRESENTATION)

54. Financial Trust repeats and realleges, as if set forth fully herein, the allegations of all the preceding paragraphs of this Verified Complaint.

55. The material misrepresentations and omissions by Bear Stearns alleged herein regarding the adequacy of Bear Stearns' liquidity and capital reserves, Bear Stearns' risk management, Bear Stearns' financial condition, and the value of Bear Stearns' assets were false and misleading at the time they were made and Bear Stearns knew they were false and misleading.

56. The material misrepresentations and omissions made by Bear Stearns regarding its risk management infrastructure and processes, its financial condition including the value of its assets, ampleness of its liquidity and the adequacy of its capital reserves were misleading and false when made and Bear Stearns knew they were false and misleading.

Case: 3:09-cv-00106-CVG-GWB Document #: 1 Filed: 08/05/09 Page 14 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint | Page 14

57. Bear Stearns' false and misleading material misrepresentations and omissions include, without limitation, the Form 10-Q's and Form 10-K's certified by officers of Bear Stearns and filed with the SEC for the calendar years 2006 and 2007, the false and misleading material statements and omissions made by Bear Stearns' officers and top executives at the October 4, 2007 Investor Day Conference, the publicized presentation at the Merrill Lynch Banking and Finance Conference on November 14, 2007, and Bear Stearns' misrepresentation in a press release on or about March 10, 2008 that there was no truth to the rumors of liquidity problems at Bear Stearns and quoting Bear Stearns CEO Schwartz as stating that Bear Stearns' "balance sheet, liquidity and capital remain strong".

58. Bear Stearns' false and misleading material misrepresentations and omissions also include the direct misrepresentations by Cayne to Epstein on August 6, 2007 that Bear Stearns' financial condition and risk management were strong, that Bear's liquidity and capital reserves were sufficient, that the value of Bear Stearns' assets was high, the collapse of the two Hedge Funds was the result of high leverage which was limited to those Funds and did not extend to the rest of the company, that Bear Stearns' access to funds in the repo market was not impaired, despite the collapse of the Hedge Funds, and that the imminent deal with the China Citic Group would provide a one billion dollar capital infusion as ample confirmation of Bear Stearns' financial health, with Cayne expressly advising Epstein to "hold tight" to all of Financial Trust's shares of stock in Bear Stearns.

59. At the time Bear Stearns and its agents made the fraudulent misrepresentations and omissions they knew and believed that the representations were untrue, incomplete and misleading, they did not have confidence in the accuracy

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 15 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                              Page 15

of the representations and they knew that they did not have the basis for the representations that were stated or implied.

60. Bear Stearns also deceived Financial Trust through false and misleading misrepresentations and omissions regarding the availability of repo financing.

61. Bear Stearns at times deceived Financial Trust through representations that Bear Stearns knew to be ambiguous. Bear Stearns made these representations with the intention that they be understood in the sense in which they were false, or without any belief or expectation as to how they would be understood or with reckless indifference as to how they would be understood and therefore these ambiguous representations were fraudulent.

62. Bear Stearns had reason to expect that the fraudulent misrepresentations and omissions made by Bear Stearns in its SEC filings referred to herein, its investor and broker-dealer conferences and press releases, and its direct conversations with Epstein, constituted information which would reach Epstein and would influence Epstein's conduct in the decision of whether to retain or sell Financial Trust's shares of Bear Stearns stock.

63. All of Bear Stearns' misrepresentations and omissions concerned facts that were peculiarly within the knowledge of Bear Stearns and not readily available to Financial Trust. Bear Stearns knew that as a result of Bear Stearns' misrepresentations and omissions, Financial Trust was acting under mistaken beliefs about material facts.

64. Bear Stearns' fraudulent, false and misleading material misrepresentations and omissions induced Financial Trust to retain the shares of Bear Stearns stock at unsustainable values until such time as Financial Trust was forced to unload the stock

Case: 3:09-cv-00106-CVG-GWB   Document #: 1   Filed: 08/05/09   Page 16 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                                   Page 16

at fire sale prices, causing Financial Trust to lose virtually all of its investment in these shares.

65.     At the time of Bear Stearns' conduct and statements as referred to herein, Bear Stearns intended or reasonably expected Financial Trust to act or refrain from acting in reliance on Bear Stearns' false and misleading material misrepresentations and omissions.

66.     Financial Trust justifiably and reasonably relied upon Bear Stearns' false statements, omissions, misrepresentations and conduct as referred to herein in acting and refraining from acting in connection with retaining ownership of Bear Stearns' stock, to the financial detriment of Financial Trust.

67.     Financial Trust's reliance was reasonable and foreseeable and was proximately caused by Bear Stearns' false and misleading misrepresentations and omissions.

68.     Bear Stearns intentionally, knowingly, or recklessly caused its communications to Financial Trust to be false and misleading.

69.     Bear Stearns made these false and misleading material misrepresentations and omissions knowingly, willfully, maliciously and in wanton disregard of the rights of Financial Trust.

70.     Bear Stearns' false and misleading misrepresentations and omissions, as alleged herein, proximately caused Financial Trust substantial harm and injuries and caused Financial Trust to sustain significant monetary damages, including both compensatory and punitive damages, in an amount to be determined at trial.

Case: 3:09-cv-00106-CVG-GWB Document #: 1 Filed: 08/05/09 Page 17 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint					Page 17

## COUNT II (NEGLIGENT MISREPRESENTATION)

71.	Financial Trust repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs of this Verified Complaint.

72.	Bear Stearns, in the course of providing information to Financial Trust regarding its economic and financial condition and actively dissuading Financial Trust on August 6, 2007 and thereafter from selling its stock, supplied information and made express representations of fact to Financial Trust for the benefit and guidance of Financial Trust in its transactions which were material, false, incomplete and misleading when made and Bear Stearns knew or should have known they were material, false, incomplete and misleading.

73.	Bear Stearns failed to inform Financial Trust of the correct and true facts relating to the financial condition, liquidity and capital base of Bear Stearns and the danger to Bear Stearns stock, the price of which went into free fall as a consequence, and failed to exercise reasonable care and competence in supplying correct and complete information to Financial Trust.

74.	Bear Stearns negligently supplied incomplete and false information for the guidance of Financial Trust for the purpose of inducing Financial Trust to retain shares of Bear Stearns stock. The information was volunteered to Financial Trust and was material to Financial Trust's investment decisions at all relevant times.

75.	This incomplete, false and misleading information supplied by Bear Stearns was done so with the express intention of having Financial Trust rely upon it.

76.	Bear Stearns was manifestly aware of how Financial Trust would use the incomplete, false and misleading information and intended to supply it for that purpose.

Case: 3:09-cv-00106-CVG-GWB Document #: 1 Filed: 08/05/09 Page 18 of 19

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint                                                                                                    Page 18

77.     Bear Stearns failed to exercise reasonable care and competence to ascertain the facts underlying the incomplete, false and misleading information communicated to Epstein and was in a unique position to know the facts and the inferences to be drawn from them.

78.     Financial Trust justifiably relied upon the incomplete, false and misleading information and representations supplied by Bear Stearns, as alleged herein.

79.     Bear Stearns' negligent misrepresentations and omissions, as alleged herein, proximately caused Financial Trust substantial harm and injuries and caused Financial Trust to sustain significant monetary damages, including compensatory damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Financial Trust respectfully requests the Court to enter judgment in its favor and against Bear Stearns for compensatory and punitive damages, as well as attorney's fees, court costs and other reasonable costs incurred, and pre-judgment and post-judgment interest.

A JURY TRIAL IS DEMANDED ON ALL ISSUES TRIABLE BY A JURY.

LAW OFFICES OF JOHN K. DEMA, P.C.
Attorneys for Plaintiff

/s/ John K. Dema

Dated: August 5, 2009     JOHN K. DEMA, Esquire
1236 Strand Street, Suite 103
Christiansted, St. Croix, USVI  00820-5008
Telephone:   340-773-6142
Facsimile:    340-773-3944

*Financial Trust Company, Inc. vs. The Bear Stearns Companies Inc.*

Verified Complaint
_____

## VERIFICATION

TERRITORY OF THE VIRGIN ISLANDS :
: ss:
DISTRICT OF ST. THOMAS :

    **Jeanne Brennan-Wiebracht**, as Vice President of Financial Trust Company, Inc., being duly sworn, states that she has read the foregoing Verified Complaint, and that it is true, except as to that which is based on information and belief, which she believes to be true.

                          FINANCIAL TRUST COMPANY, INC.

                          By: _____
                                  Jeanne Brennan-Wiebracht
                                  Vice President of Financial Trust Company, Inc.

Sworn and subscribed to
before me this __4th__ day
of __August__, 2009.

_____
Notary Public #176-07